UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERICK A. FALCONER, | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | ) Case No. 4:14-CV-424 (CEJ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM**

This matter is before the Court upon the motion of Erick A. Falconer to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The United States has filed a response, and the issues are fully briefed.

**I. Background**

On November 6, 2013, Falconer pleaded guilty to violating 18 U.S.C. § 1001(a)(2) by making a false statement to special agents of the Food and Drug Administration (FDA) during an investigation of counterfeit Botox, a prescription drug. Falconer, who was at the time a medical doctor, admitted that when the FDA agents came to his office on February 12, 2013, he knowingly lied to them about his purchases of Botox from an unlicensed wholesale drug distributor called Online Botox. Specifically, Falconer told the agents he had made only three purchases from Online Botox in 2012 when in fact he had made more than 50 purchases in a three-year period. He further admitted that he knew his false statements were

material to the FDA's investigation of whether he had received any counterfeit or misbranded drugs.

Falconer was sentenced on February 21, 2014, to a five-month term of imprisonment to be followed by a one-year term of supervised release. He did not appeal the judgment.

## II. Discussion

In the instant motion to vacate, Falconer asserts eight grounds for relief. He reasserts these grounds and submits additional argument to support them in an addendum.

### A. Mental Competence (Grounds One and Two)

Falconer alleges that at the time of the offense and at the time of his guilty plea, he was suffering from a mental disease or defect that rendered him "unable to appreciate the nature and quality or the wrongfulness of his acts" and unable to understand the nature and consequences of the proceedings and to assist in his defense. *Mot. to Vacate, p. 4* [Doc. # 1]. Thus, he claims that he was not criminally responsible for his conduct and that his guilty plea was not made knowingly and voluntarily.

In support of his claim, Falconer submits a copy of what purports to be the report of a mental evaluation that he underwent in 2011— almost two years before the offense—in connection with disciplinary proceedings before the Missouri Board of Registration for the Healing Arts. The report reflects diagnoses of sexual disorder

2

NOS[1] (sexual compulsivity/addiction), narcissistic and antisocial traits, hypertension, severe occupational and relational stress related to the disciplinary proceedings and possible criminal charges, and a GAF score of 45.[2] The recommendations of the examiners included treatment for sexual compulsivity, attendance at "a brief, intensive workshop on professional boundaries," workplace monitoring, chaperones, reasonable work hours, and no prescribing of medications. [Doc. # 5-1, p. 5].

Nothing in the report suggests that Falconer was mentally impaired to the extent that he could not perform his work as a physician. Indeed, Falconer was working as a cosmetic surgeon at the time of the offense and as an emergency room physician at the time of his guilty plea. Falconer submits no records showing that he suffered from delusions, hallucinations, or cognitive impairments. Further, it is noteworthy that the examiners' recommendations did not include psychiatric hospitalization or medication. In order to maintain an insanity defense, a defendant must prove by "clear and convincing evidence" that at the time of the

---

[1] NOS is the abbreviation for "not otherwise specified."

[2] The Global Assessment of Functioning (GAF) score is determined on a scale of 1 to 100 and reflects the clinician's judgment of an individual's overall level of functioning, taking into consideration psychological, social, and occupational functioning. Impairments in functioning due to physical or environmental limitations are not considered. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders - Fourth Edition, Text Revision 32-33 (4th ed. 2000) (DSM-IV)*. A GAF of 41-50 corresponds with "serious symptoms OR any serious impairment in social, occupational, or school functioning." *DSM-IV Text Revision 34*. A GAF of 51-60 corresponds with "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*. A GAF of 61-70 corresponds with "Some mild symptoms . . . OR some difficulty in . . . social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

offense he suffered from a "*severe* mental disease or defect" that rendered him unable to appreciate the nature and quality or the wrongfulness of his acts. *18 U.S.C. 17* (emphasis added). Proof of a mental disorder is not enough. *See United States v. Long Crow, 37 F.3d 1319, 1324 (8th Cir. 1994), cert. denied, 513 U.S. 1180 (1995)*(even if defendant suffered from post-traumatic stress disorder, he was not entitled to insanity defense jury instruction absent evidence of the severity of his mental defect). Had Falconer asserted an insanity defense based on the evidence he submits here, he would have failed.

A defendant's competence is determined by whether he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and whether he has "a rational as well as a factual understanding of the proceedings against him." *Godinez v. Moran, 509 U.S. 389, 396 (1993).* In a postconviction proceeding, the movant has the burden of establishing by a preponderance of the evidence that he was incompetent at the time of the trial or guilty plea. *Vogt v. United States, 88 F.3d 587, 591 (8th Cir. 1996).* Evidence of emotional instability will not suffice to meet the burden of persuasion. *Crawn v. United States, 254 F. Supp. 669, 673 (M.D. Pa. 1966)* ("That there may be something mentally wrong with a defendant or that he may be emotionally unstable does not necessarily render him mentally incompetent to understand the proceedings against him."). Again, the evidence submitted by Falconer falls far short of establishing that he was unable to understand the proceedings against him

or to assist in his defense. In fact, Falconer does not contend that he was unable to communicate with his lawyer or understand the legal advice he was given. Further, at the plea hearing Falconer gave appropriate answers to the questions posed by the Court and he gave no indication that he did not understand what was happening. *See, e.g., United States v. Martinez, 446 F.3d 878, 882 (8th Cir. 2006)*(district judge's observations of the defendant "can be as probative on the issue of competency as the testimony of a medical expert.")

During the guilty plea colloquy, Falconer stated under oath that he had never been diagnosed with a mental illness or mental disorder, that he had never consulted a mental health professional for any reason, and that he understood the purpose of the plea proceeding. *Plea Transcript [Doc. # 3-1, pp. 4-5]*. He also stated under oath that he understood his rights to a jury trial, to confront witnesses, to compel the attendance of witnesses, and to testify or not testify at trial. Falconer stated that he had read and understood the plea agreement, that he had reviewed it with his lawyer, and that the stipulated facts in the agreement accurately described his conduct. *Id. at pp. 8-11, 20.* Statements made under oath in open court "carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977). *See also,* <u>United States v. Harvey</u>, 147 Fed. Appx. 627, 2005 WL 2923572 (8th Cir. 2005). Falconer's assertions contradicting his sworn statements are insufficient to overcome this presumption.[3] Further, these assertions are belied

---

[3] At one point during the plea hearing Falconer gave contradictory responses about whether his statement to the FDA agents was false and whether he knew it was false at the time he made it. He later explained that he had misunderstood the Court's question. Ultimately, he

by his statement at the sentencing hearing that "[w]hen presented with the opportunity to truthfully respond to the questions asked by the investigators, I made the conscious choice not to tell the truth." *Sentencing Transcript, p. 4 [Doc. # 3-2].*

Falconer is not entitled to relief on Grounds One and Two.

### B. Prosecutorial Misconduct (Grounds Three through Eight)

Falconer claims that the prosecutor withheld from the Court information about his mental disorder. It appears that the information he refers to is the 2011 mental health evaluation that was commissioned by the state medical board. For the reasons discussed above, the report had no bearing on Falconer's competence and would not have caused the Court to reject his guilty plea. Had the report been disclosed during the plea hearing it would have shown that Falconer had lied under oath about not having been diagnosed with a mental disorder.

Falconer next claims that the prosecutor intentionally misled the Court into believing (a) that Botox is a dangerous drug; (b) that Falconer was motivated by financial gain; (c) that Falconer posed a risk to his patients; (d) that before February 2013, Falconer had received warnings about purchasing Botox from online suppliers; and (e) that the case was only about making a false statement when it was really about the prosecutor's "abusing his power to carry out the agenda of the Missouri Medical Board to revoke the defendant's license by demanding felony prosecution." *Motion to Vacate, p. 14 [Doc. # 1].* He also claims that the

---

admitted that he intentionally lied to the agents about his purchases of counterfeit Botox.

prosecutor knew of other physicians who had purchased counterfeit Botox but chose not to prosecute them. The Court has reviewed the pleadings and exhibits filed in this case and in the underlying criminal case and finds no evidence to support Falconer's claims.

As to the danger posed by Botox, Falconer acknowledges in his motion that the FDA required that the packaging bear a "black box" warning due to reports of adverse effects of the drug. *Id. at p. 8.* Certainly, the risk to patient safety would have been compounded by Falconer's use of an unapproved version of the drug. Also, according to the presentencing report (PSR), the counterfeit Botox that Falconer purchased from Online Botox was less expensive than the FDA-approved version of the drug. Thus, there was an obvious cost saving in purchasing the counterfeit drug. Further, while there was no proof that any patients were harmed by the counterfeit Botox that Falconer administered, some of his patients complained that the injections were ineffective. Falconer did not object to these statements in the PSR. Falconer has not pointed to any statement made by the government about his receipt of FDA warnings about purchasing drugs from Online Botox. His allegation concerning the government's motive for prosecuting him is no more than mere speculation.

Finally, the government has broad discretion to initiate criminal charges when there is probable cause to believe that a person committed an offense. *Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)*["[S]o long as the prosecutor has

---

*Plea Transcript [Doc. 3-1, pp. 16-20].*

probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."]. However, prosecutorial discretion is not unlimited. Thus, prosecutions that are "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification" violate the Equal Protection Clause of the Constitution. *Oyler v. Boles, 368 U.S. 448, 456 (1962).* Falconer presents no evidence—nor does he allege— that the decision to prosecute him was deliberately based on any classification that would violate his right to equal protection.

Falconer is not entitled to relief on Grounds Three through Eight.

### C. Procedural Bar

In response to the motion to vacate, the government argues that Falconer's claims are procedurally barred, because they concern issues that could have been raised on direct appeal but were not. Because the Court has determined that none of Falconer's claims have merit, it is unnecessary to address the procedural bar issue.

### III. **Conclusion**

For the reasons discussed above, the Court concludes that motion and the files and records of this case conclusively show that Falconer is not entitled to relief under 28 U.S.C. § 2255 based on any of the claims he asserts his motion to vacate. Therefore, the motion will be denied without a hearing. *See* Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). Additionally, the Court finds that

8

Falconer has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253.

An appropriate Order will accompany this Memorandum.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 29th day of March, 2017.